## Mentor v. Nozik
*[Cite as 8 AOA 644]*

*Case No. 89-L-14-080*
*Lake County, (11th)*
*Decided November 30, 1990*

*Daniel Richards, 35000 Kaiser Court, Willoughby, Ohio 44094, for Plaintiff-Appellee.*

*Albert C. Nozik, 7833 Lakeshore Boulevard, Mentor-on-the-Lake, Ohio 44060, for Defendants-Appellants.*

*Anthony J. Celebrezze, Jr., Attorney General and Dominc J. Hankett, Assistant Attorney General, 30 East Broad Street, Columbus, Ohio 43216, for Anthony J. Celebrezze, Jr., Warren W. Tyler, and State of Ohio Environmental Protection Agency, Defendants-Appellees.*

DONOFRIO, J.

This is an appeal from the Court of Common Pleas of Lake County, Ohio from a judgment rendered in favor of the City of

Mentor on its complaint for nuisance, and for the Ohio Environmental protection Agency on its cross-claim for violations of R.C. 3734.02(C), R.C. 3734.03 and R.C. 6111.04. A permanent injunction was issued against Mentor Lagoons, et al., appellants.

Appellant, Mentor Lagoons Marina, is a two hundred acre marina adjacent to Lake Erie in Mentor, Ohio. Appellant, Albert C. Nosik, is the director, president and chief executive officer of Mentor Lagoons, Inc., which operates the marina. On August 3, 1984, appellee, City of Mentor, received a complaint regarding a damaged boat and other debris that had been put behind the bulkheads at the marina. Upon inspection of the premises, a Mentor Community Development Department employee discovered a large amount of refuse, some of it partially buried, behind the bulkheads. Among those items found were a chair, some car tires, electrical wires, shredded newspapers, bottles, cans, pieces of carpeting, a canvas boat cover, a metal canister, some mattresses, car axles, a hot water tank, and assorted wood scraps.

On September 11, 1984, a second inspection was conducted wherein additional items were found, including refrigerators, mattresses, car tires, car frames, two clothes dryers and a television set.

The marina has also been inspected on an annual basis since 1975 by the Lake County Health Department. In all but two of those years, Warren Wissman conducted the inspections. At each inspection, it was noted that there was illegal dumping of solid waste material, as that term is defined by the Environmental Protection Agency. Nozik was notified of the results of these inspections, and he was instructed to stop the dumping and remove certain items that were already behind the bulkheads.

Nozik maintained that the items were put there to help prevent erosion of the property. He refused to remove any of the debris, and the evidence indicates that the amount of debris increased with each annual inspection since 1980. It is undisputed that the marina did not have the necessary permits or licenses from the Ohio EPA or the Lake County Health Department to operate a waste landfill.

On February 6, 1987, the City of Mentor filed a complaint and motion for a temporary restraining order in the Lake County Common Pleas Court. The trial court held a hearing on May 1, 1987 and, on May 13, 1987, granted appellee's motion for a temporary restraining order.

On May 13, 1987, the City of Mentor filed an amended complaint against Mentor Lagoons, Inc., Albert Nozik, the Lake County General Health District, and the State of Ohio Environmental Protection Agency. The city alleged violations of the Ohio Revised Code and the Mentor Code of Ordinances and that the dumping created a nuisance. The city sought injunctive relief.

On June 29, 1987, the State of Ohio filed its answer to the complaint and cross-claim against Mentor Lagoons, Inc. and Albert Nozik. In its cross-claim, the state alleged that Mentor Lagoons had violated R.C. 6111.04, R.C. 3734.02(C), and Ohio Adm. Code 3745-31-02(A), which are all concerned with the disposal of solid waste without proper authority.

The matter went to trial on April 21, 1988 and was concluded July 29, 1988. By judgment dated February 15, 1989, the trial court found violations of R.C. 3734.02(C), prohibiting unregulated solid waste disposal, R.C. 3734.03, prohibiting unregulated open dumping, and R.C. 6111.04 regarding water pollution, statutory public nuisance and common law public nuisance. The trial court ordered Albert Nozik and Mentor Lagoons, Inc. to stop dumping solid waste on its property and to clean up the waste that was already there. Further, Nozik and Mentor Lagoons, Inc. were assessed a civil penalty of $18,365, jointly and severally.

Appellants filed a motion for a new trial on March 1, 1989, which was denied on March 17, 1989. On March 21, 1989, appellants filed a motion for clarification of the opinion and judgment entry. This was subsequently denied on April 13, 1989. Appellants timely filed a notice of appeal on May 25, 1989.

Appellants' first assignment of error states:

"The trial court erred to the prejudice of defendants-appellants in granting a temporary restraining order and an injunction to plaintiff-appellee without showing that some wrong, injustice and irreparable damage had been done, for which there was no adequate remedy at law."

In the first assignment of error, appellants argue that the trial court erred in granting appellee's motion for a temporary restraining order and an injunction without proof that some wrong, injustice or irreparable damage had been done for which there was no adequate remedy at law. Appellants maintain that, pursuant to Civ. R. 65, a temporary restraining order may only be granted if it appears that immediate and irreparable injury, loss or damage will result to the applicant and that, in the present case, such injury, loss or damage was not shown by clear and convincing evidence by appellee.

In the case *sub judice,* however, it was not necessary for the City of Mentor to show irreparable damage or lack of an adequate legal remedy. In *Ackerman v. Tri-City Geriatric & Health Care, Inc.* (1978), 55 Ohio St. 3d 51, at 56, the Ohio Supreme Court stated:

"*** It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction 'need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law ***.' *Stephan v. Daniels* (1875), 27 Ohio St. 527, 536. ***" The court, at 57, explained:

"*** It would *** be redundant to require the *** [State] to show irreparable damage or lack of an adequate legal remedy once *** [it] has already proved that the conditions which the General Assembly has deemed worthy of injunctive relief exist. ***"

The version of R.C. 3734.10 in effect at the time of the filing of the complaint in the present case provided for injunctive relief upon a showing that any section of R.C. Chapter 3734 is being violated. It stated, in pertinent part:

"*** The court of common pleas *** has the jurisdiction to and shall grant preliminary and permanent injunctive relief upon a showing that the respondent named in the petition is operating a solid waste facility in violation of any section of this chapter or a hazardous waste facility in violation of any section of this chapter or regulations adopted thereunder."

This court has previously applied the logic and reasoning of *Ackerman, supra,* to R.C. 3734.10. In *State, ex rel. Celebrezze,* v. *J. V. Peters & Co.* (Apr. 19, 1985), Geauga App. No. 1088, unreported, this court held:

"*** Where the legislature has expressly provided for the availability of injunctive relief to halt violations of state law such as engaging in a business or activity without a permit, an injunction will issue solely upon a showing that the conditions set forth by the legislation authorizing such relief has been met. ***"

Therefore, it was only necessary that the City of Mentor show that appellants were violating some section of R.C. Chapter 3734. There was ample evidence at the hearing on May 1, 1987 to support the trial court's conclusion that appellants had been disposing of solid waste illegally and that a temporary restraining order and an injunction were mandated.

Appellants' first assignment of error is without merit.

Appellants' second assignment of error states:

"The trial court erred to the prejudice of defendants-appellants in finding that defendants-appellants created a public nuisance by depositing unpolluted and uncontaminated solid wastes behind bulkheads to deter the continual erosion process of the land."

In the second assignment of error, appellants claim the trial court erred in finding that they created a public nuisance by depositing solid waste behind the bulkheads, in violation of R.C. 3734.03. Appellants assert that the use of solid wastes, as defined in R.C. 3734.01(E), that are not hazardous, infectious, contaminated or inimical to the public welfare are not illegal when used for erosion control purposes.

R.C. 3734.01(E) defines "solid wastes" as:

"*** [S]uch unwanted residual solid or semisolid material as results from industrial, commercial, agricultural, and community operations, excluding earth or material from construction, mining, or demolition operations, or other waste materials of the type that would normally be included in demolition debris, nontoxic fly ash, spent nontoxic foundry sand, and slag and other substances that are not harmful or inimical to public health, and includes, but is not limited to, garbage, tires, combustible and non-combustible material, street dirt, and debris. 'Solid wastes' does not include any material that is an infectious waste or a hazardous waste."

Appellants interpret the statute as meaning any waste that is not harmful or inimical

to public health does not fit the category of solid waste.

The trial court rejected appellants' interpretation and was correct in doing so. In reviewing the language of the statute, it appears that the legislature was attempting to distinguish between materials which are the result of relatively extensive refining and manufacturing processes and materials which have not been substantially altered from their naturally occurring form. "Solid waste" clearly includes items such as garbage, tires and debris. It does not include any material that is an infectious waste or a hazardous waste, as those items are treated separately under other code sections.

The limited exception that the legislature carved out applies to earth or materials from construction, mining or demolition operations. The phrase, "and other substances that are not harmful or inimical to public health," is part of the exception and refers to other materials which remain substantially unaltered from their original, natural condition and which are, therefore, not harmful or inimical to public health. Examples may include stone, brick, clay or sand, but certainly would not include automobile frames, refrigerators, hot water tanks, television sets, mattresses or plastic containers.

Further assistance in interpreting R.C. 3734.01(E) can be found in Ohio Adm. Code 3745-27-01(UU), wherein "solid wastes" is defined as:

"*** [S]uch unwanted residual solid or semisolid material as results from industrial, commercial agricultural, and community operations, excluding earth or material from construction, mining, or other waste materials of the type that would normally be included in demolition debris, nontoxic fly ash, spent nontoxic foundry sand, and slag and other substances that are not harmful or inimical to public health, and includes, but is not limited to, garbage, tires, combustible and noncombustible material, street dirt, and debris. Solid waste does not include any material that is an infectious waste or hazardous waste.

"For the purpose of this definition, 'material from construction operations or demolition operations' are those items affixed to the structure being constructed or demolished, such as brick, concrete, stone, glass, wallboard, framing and finishing lumber, roofing materials, plumbing, plumbing fixtures, wiring, and insulation, but excludes materials whose removal has been required prior to demolition."

The definition is similar to that set forth by statute but goes into more detail with respect to construction and demolition operations. It lists some materials that would be termed "solid waste" were it not for the fact that they were intimately integrated with other acceptable materials that resulted from demolition operations. These include concrete, plumbing fixtures, and wiring which, to separate from acceptable materials in a demolition, would make the demolition cost prohibitive.

There is no evidence that the materials found on appellants' property were the result of a construction, mining or demolition operation. Instead, they were transported to the site and dumped there allegedly to help control the erosion process. There is no statutory exception for such purpose. Therefore, the trial court correctly concluded that most of the debris discovered behind the bulkheads at the marina was "solid waste" and should be removed since appellants did not have a permit to dump solid waste at that location.

Appellants' second assignment of error is overruled.

Appellants' third assignment of error states:

"The trial court erred to the prejudice of defendants-appellants in admitting video hearsay evidence and denying the right of cross-examination to defendants-appellants."

In the third assignment of error, appellants argue that the trial court erred in admitting video tape evidence where the adverse parties were not present at the time the video tape was being recorded.

Pursuant to Evid. R. 1001, video tapes are subject to the same rules of admissibility as photographs. Once a proper foundation has been established through relevancy, authenticity and accuracy of portrayal, the video tape is admissible. *Streit v. Kestel* (1959), 108 Ohio App. 241. Additionally, there is no requirement that the opposing party be present during the recording of the video tape in order that it be admissible into evidence. *Barton v. Anderson* (Dec. 22, 1988), Union App. No. 14-86-19, unreported.

In the instant case, Frank Kellogg from the Lake County Health Department was

present during the video taping in question and testified before the video tape was admitted into evidence that it was a complete, fair and accurate representation of what he had witnessed at the site. Further, appellants had the opportunity to question Kellogg on cross-examination concerning the procedure for taking and marking the video tape, the location of the items seen on the tape, and the accuracy of the tape.

For the foregoing reasons, it was not prejudicial error to admit the video tape into evidence.

Appellants' third assignment of error is without merit.

Appellants' fourth assignment of error states:

"The opinion and order of the trial court is against the manifest weight of the evidence."

In the fourth assignment of error, appellants claim that the trial court's judgment is against the manifest weight of the evidence.

Once again, appellants maintain that, in order to meet the definition of "solid waste" under R.C. 3734.01(E), it must be shown that the material is hazardous, infectious, unsightly, grotesque or offensive to the senses. As previously discussed, however, appellants' interpretation of R.C. 3734.01(E) is incorrect and without support. Competent, credible evidence established that solid waste was found in abundance on appellants' property. The trial court's decision, therefore, was not against the manifest weight of the evidence.

Appellants' fourth assignment of error is not well taken.

Appellants' fifth assignment of error states:

"The trial court erred to the prejudice of defendants-appellants in denying the motion filed by the defendants-appellants to reopen the case for newly discovered evidence."

In the fifth assignment of error, appellants claim the trial court erred in denying their motion to reopen the case for newly discovered evidence. Said motion was filed after both sides had rested before the trial court concluded its deliberations.

A review of the civil rules reveals no provision for making a motion to reopen a case prior to the court entering judgment. Appellants attempt to use Civ. R. 59 to support their theory, but, Civ. R. 59, which addresses motions for new trials, clearly

states that said motion shall be served within fourteen days *after* the entry of the judgment.

Moreover, even if appellants' motion was procedurally proper, the decision whether to grant a motion to reopen is within the sound discretion of the trial court and will not be disturbed absent abuse of discretion. *Ketcham v. Miller* (1922), 104 Ohio St. 372. In the present case, appellants claim that there was newly discovered evidence which required the trial court to reopen the case. However, newly discovered evidence sufficient to require a new trial must be such that it would not have been discovered and produced at trial if reasonable diligence had been used. Civ. A. 59(A)(8). Due diligence was not exercised by appellants in this case. The evidence that was supposedly newly discovered had been in existence for eight years. Appellants have failed to show that the trial court abused its discretion in denying their motion to reopen the case.

Appellants' fifth assignment of error is overruled. Appellants' sixth assignment of error states:

"The trial court erred to the prejudice of defendants-appellants in denying defendants-appellants' motion to clarify the trial court's order of injunction which is confusing and unclear to the movant."

In the sixth assignment of error, appellants assert that the trial court erred in denying their motion to clarify its opinion and judgment entry. Appellants had requested the trial court:

"*** to explain and clarify the materials, method of removal and the disposal of the 'solid wastes,' so that these defendants may commence making preparations for removal of those materials ***."

It is clear that the trial court addressed all relevant and important matters in its opinion. The trial court stated, in pertinent part:

"All solid, industrial or other waste, as defined herein or by statute or applicable Ohio Adm. Code provision, excepting the previously enumerated wood deposits (excluding furniture) shingles, gutters and metal scraps normally associated with the structural demolition of construction, if exposed in any manner (to-wit: is not subterranean), shall be removed. Also, solid waste excepted above which constitutes pollution, as herein

defined provided the same is invaded by the lagoon waters shall be removed.

"To facilitate orderly removal, given the magnitude of the clean-up, the court has divided Mentor Lagoons into four sectors, as seen in the attached aerial view. Removal shall commence with Sector 1 and continue to Sectors 2, 3 (the areas abutting water) and 4 (all inland areas). Further,

"1) The removal process shall commence May 1, 1989, provided the ground and waters comprising Sector 1 are thawed.

"2) A maximum of forty-five (45) days is alloted (*sic*) for each sector clean-up.

"3) All waste and pollution which is subject to removal herein shall be disposed at a licensed solid waste disposal facility. Receipts shall accompany each truck load removed indicating date, transporter and dated signature of the accepting facility's representative. These receipts shall be presented to the court designate.

"4) Until the court designate files written certification with the court that all waste and pollution subject to removal by this order is completed in any given sector, no refilling permitted (*sic*) is permitted that sector or any succeeding sector.

"5) All refiling shall comprise of materials approved by court's designate based on criteria set forth in either state statute and/or administrative code, municipal ordinance or any regulation/procedure of the same.

"Within fourteen (14) days of this entry's journalization, Mentor, Ohio EPA and LCGHD shall submit in writing to the court their mutual choice for court's designate. If no agreement is reached, each shall submit its own choice. The function of the court's designate shall be limited to visually monitoring the removal process, apprising the court (as noted herein), apprising the parties and insuring that proper fill is placed on marina property. He/she shall have access to marina grounds during business hours, but shall not interfere with any marina activity, including the clean-up ordered herein. The use of any form of camera or recording device shall be permitted to carrying out these duties. The court designate shall maintain a log of his activities and time. Any extraordinary costs incurred (above his/her regular salary at either Mentor, Ohio EPA or LCGHD), shall be assessed as costs, upon application and approval of the court."

The trial court's order is thorough in its instructions. It specifies which materials must be removed and which are acceptable. It provides for an orderly plan for removal by dividing the area into four sectors. It instructs appellants where to dispose of the materials in question, and it provides for a method of monitoring and certifying the removal process. There is no latitude for misinterpretation and, thus, no need for clarification.

Appellants' sixth assignment of error is without merit.

Appellants' seventh assignment of error states:

"The trial court committed error prejudicial to the defendants-appellants in denying defendants-appellants, motion to dismiss."

In the seventh assignment of error, appellants contend that the trial court erred in denying their motion to dismiss. They claim that the trial court did not have jurisdiction to hear the case.

The trial court, however, never indicated that it lacked jurisdiction to hear the case, despite appellants' assertion that it did. The trial court stated that, pursuant to *State, ex rel. Maynard, v. Whitfield* (1984), 12 Ohio St. 3d 49, and *State, ex rel. Tyler, v. McMonagle* (1986), 25 Ohio St. 3d 13, it only had jurisdiction to determine whether the materials found on appellants' property were "solid waste" as that term is defined in R.C. 3734.01(E). Under such circumstances, the trial court was not obligated to dismiss the case for lack of jurisdiction. Appellants are unable to cite any authority to the contrary.

For the foregoing reasons, the trial court did not err in denying appellants' motion to dismiss.

Appellants' seventh assignment of error is without merit and, accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and FORD, J., concur.

DONOFRIO, J., Seventh Appellate District, sitting by assignment.